PEOPLE v DORSEY

1. CRIMINAL LAW—PRELIMINARY EXAMINATION—TRANSCRIPT—IMPEACHMENT—COMPLAINING WITNESS.

It was not error for the trial judge in a nonjury trial to examine the preliminary examination transcript for purposes of impeachment of the complaining witness's testimony and for that purpose only where the parties had stipulated that such an examination be made.

2. WITNESSES—RES GESTAE WITNESSES—MEDICAL EXAMINATION.

A medical witness who examined the complainant 13 days after the events which gave rise to the prosecution was properly found not to be a res gestae witness, and failure to produce him was not error where he was out of the state working at an understaffed hospital and a showing was made that his evidence would be cumulative only.

3. EVIDENCE—MATERIAL EVIDENCE—SUPPRESSION OF EVIDENCE—CONTEMPT.

Failure to disclose that the complaining witness had been found in contempt of court for not appearing on the original trial date although subpoenaed was not error, where the suppression was not deliberate and defendant had not requested the evidence and where there is no showing that the evidence was likely to have changed the result.

4. CRIMINAL LAW—SENTENCES—PENDING CHARGES—APPEAL AND ERROR.

Consideration of a pending charge against a defendant in passing sentence on him is reversible error.

Appeal from Genessee, Donald R. Freeman, J.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses § 698.
[2] 53 Am Jur, Trial §§ 695, 697.
[3] 29 Am Jur 2d, Evidence § 292.
[4] 21 Am Jur 2d, Criminal Law § 533.

Submitted Division 2 January 4, 1973, at Lansing. (Docket No. 13528.) Decided February 23, 1973. Leave to appeal denied, 389 Mich 793.

Randolph H. Dorsey was convicted of extortion. Defendant appeals. Affirmed and remanded for resentencing.

*Frank J. Kelley,* Attorney General; *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Department, and *Martin F. Palus,* Assistant Prosecuting Attorney, for the people.

*David A. Goldstein,* Assistant State Appellate Defender, for defendant.

Before: QUINN, P. J., and R. B. BURNS and C. J. BYRNS,* JJ.

QUINN, P. J. Defendant's non-jury trial resulted in his conviction of extortion, MCLA 750.213; MSA 28.410. He was sentenced and he appeals.

In an unnecessarily voluminous brief, defendant raises and discusses seven issues and two sub-issues. Most of the issues as stated do not comply with GCR 1963, 813.1; they are not set forth in "the briefest terms". Concisely stated the issues are:

1. Was it reversible error for the prosecuting attorney to ask defendant the nature of a prior charge not resulting in conviction?

2. Was it reversible error for the trial judge to look at the preliminary examination transcript?

3. Did the trial judge commit reversible error in not requiring production of an endorsed witness?

4. Was there testimony at the preliminary examination to establish a threat to complainant?

---

* Circuit judge, sitting on the Court of Appeals by assignment.

5. Did the failure of the prosecuting attorney to disclose contempt proceedings against complainant constitute suppression of evidence?

6. Is it reversible error for the trial judge to consider a pending charge against defendant in passing sentence?

7. Does the sentence given violate *People v Tanner,* 387 Mich 683 (1972)?

The gist of the extortion for which defendant was convicted arose from the complainant's charge that he caused her to solicit for purposes of prostitution in order to raise money needed by defendant. That after successful solicitation, she was compelled to give defendant money she received from the customer because of defendant's threats and actions.

Our review of the record does not establish that the prosecuting attorney interrogated defendant as to the nature of a prior charge not resulting in conviction. The record does establish interrogation as to the nature of a prior charge which defendant admitted resulted in his conviction.

Under the following circumstances, the trial judge examined the preliminary examination transcript. During the cross-examination of complainant, the record discloses:

"*Q.* Now you recall testifying in district court, do you not?

"*A.* Yes.

"*Q.* Did you at any time while you were in district court make any statement to the court that Mr. Dorsey threatened you?

"*A.* Yes, I think I did.

"*Q.* All right. Why don't you look at this transcript. You find me anything in that transcript relative to when he threatened you—that he made to you—.

"*The Court:* Counsel, I wonder for a moment whether

a witness has an obligation to examine an entire transcript to find material within it. If you wish to ask her questions about it—

"*Mr. Jones:* Well, your Honor, the only thing is there is nothing in the transcript relative to testimony that he threatened. No other way—

"*The Court:* Perhaps by some sort of stipulation by counsel—I don't like to put the witness in a position that she has to—

"*Mr. Jones:* I will ask the prosecutor will he stipulate to the fact the examination in the district court that there was no testimony about any threat being made.

"*The Court:* In the alternative, gentlemen, I assume it is possible for you to ask the court to accept into evidence the transcript for the purpose of making that determination.

"*Mr. Payette:* Your Honor, I would be willing to place the transcript in evidence at the court's disposal for purposes of whatever value it may have in impeaching this witness. I believe that's what Mr. Jones intends to use it for and I have no objection to that.

"*The Court:* Now I am bearing in mind that ordinarily the transcript is obviously not a part of these proceedings and that impeachment is the general purpose of the use of the transcript. It seems to me slightly unfair to take a witness and say that you look through the whole thing and you find something in there. She may not be schooled, or may be incapable of making a determination, and I am not sure I could accept her answer regardless of what it may be.

"*Mr. Jones:* I think the stipulation is fine.

"*The Court:* All right. If you can stipulate and agree that I may examine it for the purpose of impeachment, only that; but not substantive proof only impeachment of her testimony—

"*Mr. Jones:* Fine.

"*The Court:* Then I am willing to accept it in evidence.

"*Mr. Jones:* Fine. Thank you."

Defendant claims reversible error under the holding in *People v Ramsey,* 385 Mich 221 (1971).

We hold *Ramsey* inapplicable and we find no error.

The alleged error concerning the nonproduction of a witness relates to Dr. Crawford. He examined complainant 13 days after the events which gave rise to this prosecution. Defendant labels him a res gestae witness in the face of a specific finding by the trial judge that Dr. Crawford was not a res gestae witness and a record which fully supports that finding.

Dr. Crawford had moved to West Virginia prior to trial where he was working in an understaffed hospital. The testimony of Dr. Crawford would have been cumulative in view of the testimony of complainant and officer Wood concerning complainant's injuries and the photos of those injuries. We consider the claimed reversible error in not producing Dr. Crawford entirely specious.

By assuming that the preliminary examination transcript did not contain evidence of a threat, defendant makes an apparently valid argument that complainant's trial testimony that she was threatened was coerced by the contempt proceedings brought against her. The testimony of complainant at preliminary examination discloses that defendant would not let her go home unless she went on the street and "hustled" for him and returned her earnings to him, and that defendant physically assaulted her when she failed to give him money. Complainant further testified at preliminary examination that defendant kept her under his control for four days of soliciting and that defendant told her he would not let her go home until she got him some money. The spuriousness of the assumption is apparent and it demonstrates the invalidity of the argument.

Although subpoenaed, complainant failed to ap-

pear on the original trial date. The same judge before whom the defendant was tried cited her for contempt, and, after hearing, found her in contempt. Defendant now says that the failure of the prosecuting attorney to disclose the contempt proceedings constitutes suppression of evidence. In *United States v Keogh,* 391 F 2d 138 (CA 2, 1968), the Court categorizes three types of cases involving suppression of evidence by the prosecution:

1. Deliberate suppression of evidence which has value to the defense. Prejudice to defendant is apparent.

2. Suppression of evidence where the evidence is requested by the accused and this request is denied by the prosecuting attorney and the court. This is a violation of due process if the evidence requested is material to the accused's guilt or punishment irrespective of the good or bad faith of the prosecuting attorney.

3. Suppression is not deliberate and defendant has not requested the evidence, but "hindsight discloses that defense could have put the evidence to not insignificant use".

As to the third category, the Court in *Keogh* said, "While we do not dispute that relief may sometimes be granted even in such cases, the standard of materiality must be considerably higher". The opinion went on to hold:

"Deliberate prosecutorial misconduct is presumably infrequent; to invalidate convictions in the few cases where this is proved, even on a fairly low showing of materiality, will have a relatively small impact on the desired finality of judgments and will deter conduct undermining the integrity of the judicial system. The request cases also stand on a special footing; the prosecution knows of the defense's interest and, if it has failed to honor this even in good faith, it has only itself to blame. Failure to appreciate the use to which the

defense could place evidence in the prosecution's hands, or forgetfulness that it exists when a development in the trial has given it a new importance, are quite different. Since this must happen to the most scrupulous prosecutors and the issue of deterrence scarcely arises, the problems of the courts and the wider interests of society unite to require a substantially higher probability that disclosure of the evidence to the defense would have altered the result. To invalidate convictions in such cases because a combing of the prosecutor's files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict would create unbearable burdens and uncertainties."

We find the evidence that defendant claims was suppressed in this case falls in the third category. We adopt the *Keogh* test for determining whether the higher materiality has been shown, and we hold that it has not been shown.

Defendant's sentence of 15 to 20 years is in violation of *Tanner, supra.* We could correct the sentence to conform to *Tanner.* However, it was reversible error for the trial court to consider a pending charge against defendant in passing sentence, *People v Zachery Davis,* 41 Mich App 683 (1972).

Affirmed and remanded for resentencing.

All concurred.